In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4069

ALBERT WOODS,

Plaintiff-Appellant,

v.

CITY OF CHICAGO, OFFICER MAKOWSKI,
Chicago Police Officer #16971, OFFICER
ALANIS, Chicago Police Officer #5001,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 7092--Charles R. Norgle, Sr., Judge.

Argued September 13, 2000--Decided DECEMBER 8, 2000

Before Flaum, Chief Judge, and Bauer, and
Kanne, Circuit Judges.

BAUER, Circuit Judge.  Plaintiff-
Appellant Albert Woods appeals from the
order of the United States District Court
for the Northern District of Illinois,
Eastern Division, granting summary
judgment to defendants-appellees
Makowski, Alanis, and the City of
Chicago. For the reasons set forth below,
we affirm.

BACKGROUND

Albert Woods was arrested at his place
of employment for misdemeanor assault.
After the charges against him were
dropped, Woods filed an action under 42
U.S.C. sec. 1983 against the City of
Chicago and Chicago police officers
Makowski and Alanis, asserting violations
of his Fourth Amendment rights. In his
complaint, Woods contended that the
officers acted unreasonably in arresting
him without a warrant for misdemeanor

assault one day after Gabriel Flores (the putative assault victim) signed a criminal complaint against him. He also asserted that the officers acted in accordance with a policy of the City of Chicago authorizing its police officers to make a full custodial arrest for a misdemeanor that did not involve a breach of the peace and that had not been committed in the officers' presence. The officers moved to dismiss Woods' complaint against them under Fed. R. Civ. P. 12(b)(6), arguing that Flores' report of the assault to the police (which Woods had referenced in his complaint) gave them probable cause to arrest Woods, and that arrests supported by probable cause are reasonable under the Fourth Amendment subject to a "rare exception" not applicable in Woods' case. The City moved to dismiss on similar grounds, arguing that even if Woods could show that the City had a municipal "policy" authorizing warrantless arrests for misdemeanors not involving a breach of the peace and not committed in an officer's presence, such a policy would not be unconstitutional as applied to Woods' arrest, which was authorized by state law and based on probable cause.

Woods filed a memorandum opposing the City's motion to dismiss, arguing that his complaint did not demonstrate that the officers had probable cause to arrest him. According to Woods, the complaint merely asserted that a citizen had walked into a Chicago police station on July 21, 1997 and stated that on July 18, 1997 he had been "verbally assaulted" by Woods. Woods noted that the complaint did not allege that this information was communicated to the arresting officers. Furthermore, he contended that even if the arresting officers had been aware of the citizen's complaint, it did not provide them with probable cause to arrest because "verbal assault" is not an offense under Illinois law.

The City and the individual defendants jointly filed a reply. Attached to the reply were various exhibits, including a copy of Flores' verified misdemeanor complaint and a copy of the arresting officer's report of Woods' arrest. The verified misdemeanor complaint (signed under oath by Flores) charged Woods with

aggravated assault, and stated that "on or about 18 July '97. . . [Woods] while using a deadly weapon, length of a lead pipe, did without lawful authority produce weapon and came at victim yelling I'm going to kill you, which placed Gabriel Flores in reasonable apprehension of receiving a battery." The arrest report essentially repeated this account of the incident, stating that,

[t]he above subject arrested for [a]ggravated assault. On 18 July 97 victim went to truck leasing company where offender is employed to gas up a leased truck. At that time offender got into a verbal arguement [sic] with victim and produced a lead pipe and told victim I'm going to kill you. When offender started to approach victim, victim got into his truck and fled the scene. R/O's interviewed victim who signed complainats [sic], R/O's went to offender's place of employment, placed subject under arrest and advised subject of his rights which he stated he understood.

The arrest report was signed under the statement "I do solemnly, sincerely, and truly declare and affirm that the facts stated herein are accurate to the best of my knowledge."

Woods moved to exclude these exhibits on grounds that such evidentiary material could not be considered during a motion to dismiss. He argued that the court could not consider the exhibits unless it first converted the motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 12(b), and that such a conversion would be inappropriate in this case. Finally, he argued that unless the court excluded these materials, it must give Woods an opportunity to respond, and that in order to do so Woods must be allowed to depose the officers who signed the arrest report "about the report and about the circumstances of the signing of the complaint" as well as "the citizen upon whose alleged complaint plaintiff was arrested." The court granted Woods' motion to exclude the exhibits. Subsequently, the court granted the City's motion to dismiss on the ground that Woods had failed to state a municipal policy, and it gave Woods leave to file an amended complaint.

Woods filed an amended complaint which restated his earlier claim that Flores claimed to have been "verbally assaulted" by Woods, and which explicitly stated that such a claim did not supply the officers with probable cause to arrest Woods. The amended complaint also reasserted that the officers violated Woods' Fourth Amendment rights by arresting him without a warrant for a misdemeanor offense not commited in their presence and not involving a breach of the peace pursuant to a municipal policy authorizing such arrests. Again, the defendants moved to dismiss, arguing that Flores' complaint established probable cause./1 Woods opposed the defendants' motion, again contending that even if the officers had been aware of Flores' complaint (which his complaint did not allege), that complaint did not provide probable cause to arrest because "verbal assault" is not an offense under Illinois law, which defines assault as "conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1.

The court then converted the defendants' motion to dismiss into a motion for summary judgment, noting that the defendants had attached "pertinent evidentiary material" to their reply to Woods' memorandum in opposition to the motion to dismiss Woods' original complaint. Addressing Woods' claim that Flores had complained merely of a "verbal assault," the court quoted the arrest report's account of Flores' complaint, which stated that Woods had brandished a lead pipe during the altercation and which specifically referenced Illinois' aggravated assault statute. The court stated that "the misdemeanor complaint, filed by Gabriel Flores, further indicates that Woods committed an aggravated assault with a deadly weapon while threatening to kill Flores," and that "this evidence indicates that thearresting officers arrested Woods based on information that Woods committed an aggravated assault." In ordering Woods to respond to the motion for summary judgment, the court admonished him to "pay particular attention" to Fed. R. Civ. P. 11(b), and stated that: "Woods' characterization of the altercation as a 'verbal assault' is grossly misleading.

Further, his argument that 'nowhere in the complaint does plaintiff allege that any police officer had been informed that plaintiff had engaged in conduct which placed another in reasonable apprehension of receiving a battery' . . . ignores facts and logic in a blatant attempt to survive the motion [to] dismiss."

In Woods' response, he argued that the arrest report and the misdemeanor complaint could not be considered on a motion for summary judgment because: (1) the defendants had not laid any foundation for their admission, (for example, they did not show the date or time of the alleged interview between Flores and the arresting officers in the arrest report); (2) they were unauthenticated; and (3) the police report did not fully and fairly set out the facts. In support of the latter argument, Woods attached a Chicago Police Case Report to his response, which he relied upon for its accuracy. The case report stated that "R/O interviewed the victim who related to R/O that . . . offender . . . grabbed lead pipe--told victim to get out of the truck and said 'If I get fired over this, I'm going to kill you.' Victim left thinking offender overreacting. Today's date 21 Dec. '97 offender told two of victim's co-workers (Kenny and Mike) that he was going to 'get' victim because victim filed report. Victim given victim information sheet. R/O advised warrant." Woods argued that the case report demonstrated that the police lacked probable cause to arrest him because it showed that Flores waited three days to report the incident and told the police that he left thinking Woods was "overreacting," and because Flores' account of the incident showed only that Woods had "verbally assaulted" Flores, not that he had placed Flores in reasonable apprehension of receiving a battery. Woods also noted that the police had no documentation showing that they investigated Flores' complaint or made any effort to corroborate it (e.g. by speaking to Flores' supervisor or to either of the two coworkers who allegedly heard Woods' renewed threat to "get" Flores.) Woods asked the district court to vacate its order converting the motion to dismiss into a motion for summary judgment, and in the alternative, to postpone ruling on the motion until Woods

had a chance to depose Flores and the officers who signed and prepared the arrest report.

In ruling on the summary judgment motion, the district court found that it could properly consider the police report and the misdemeanor complaint. Responding to Woods' objection that the documents were not authenticated, the court held that the documents were "credible and trustworthy" because they were sworn to under oath by the officers and by Flores, and because they were business records kept by the police department. Additionally, the court found that Woods had admitted to the accuracy of the complaint and the arrest report by attaching and relying on the case report, which corroborated the account given by the complaint and the arrest report. The court also noted that it was examining the records "not for their truth, but for what the officers knew when they arrested Woods."

Upon considering the exhibits, the court concluded that they showed that the officers had arrested Woods believing that he had threatened to kill Flores with a lead pipe, and that this alone established probable cause. In response to Woods' discovery request, the court noted that it had given Woods the opportunity to show why it should not accept the information in the complaint and the arrest report as credible, and that he had failed to do so (indeed, he had even corroborated the documents by submitting the case report). Moreover, the court found that Woods had offered absolutely no evidence that the documents were "fraudulent, signed by mistake, or even inaccurate," nor had he even denied that he had threatened to kill Flores while approaching him with a lead pipe. Under the circumstances, the court found that depositions would be a waste of time, and it granted summary judgment for the defendants without allowing Woods to depose Flores or the officers who signed the arrest report. This appeal followed.

DISCUSSION
I. Procedural Issues

Woods argues that, in deciding the

converted motion for summary judgment, the district court improperly considered the verified misdemeanor complaint and the arrest report. He also argues that the district court abused its discretion in ruling on the motion without allowing him to depose Flores and the officers who prepared and signed the arrest report.

A district court may properly grant summary judgment when "the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Whetstine v. Gates Rubber Co., 895 F.2d 388, 391-92 (7th Cir. 1990) (citation omitted). The moving party has the burden of establishing the lack of such an issue. See id. at 392 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

We review a district court's grant of summary judgment de novo, drawing all reasonable inferences from the record in the light most favorable to the nonmovant.

As a preliminary matter, we note that the court did nothing improper in converting the defendants' motion to dismiss into a motion for summary judgment. Under Fed. R. Civ. P. 12(b), a district court must make such a conversion when matters outside of the complaint are presented and not excluded by the court. Here, the district court initially granted Woods' motion to strike the defendants' exhibits, and ruled on the initial motion to dismiss without considering the exhibits or anything outside of the pleadings. Then, after Woods filed an amended complaint and the defendants moved again to dismiss, the court reconsidered the previously stricken exhibits and treated the defendants' new motion to dismiss as a motion for summary judgment. Woods cites no cases that suggest that a district court may not consider previously stricken exhibits in ruling on a converted motion for summary judgment, and we find that the district court acted properly in doing so here.

However, Woods argues that the district

court erred in considering the arrest report and the misdemeanor complaint in deciding the summary judgment motion because the reports contained inadmissible hearsay, and because the documents were not "affidavits" under Fed. R. Civ. P. 56(e) and 28 U.S.C. sec. 1746. He also argues that the district court abused its discretion in ruling on the summary judgment motion before giving him leave to depose Flores and the officers who signed and prepared the arrest report. We address these arguments in turn.

A. Woods' Hearsay Argument

Woods argues that the arrest report and the misdemeanor complaint contained inadmissible hearsay, and therefore could not properly be considered on a motion for summary judgment. The district court found that the information in these documents was credible and trustworthy under Fed. R. Evid. 803(6) because they were sworn to under oath by the officers and by Flores, and because they were business records kept by the police department. Woods concedes that portions of police reports that contain information prepared by the business are admissible as business records. For example, Woods suggests that a properly authenticated police report would be admissible to show the date and time of the arrest and the date and time that the arrestee was released on bond. However, Woods notes that "the business records exception does not embrace statements contained within a business record that were made by one who is not a part of the business if the embraced statements are offered for their truth." United States v. Vigneau, 187 F.3d 70, 75 (1st Cir. 1999). In other words, Woods argues that statements made by third parties in an otherwise admissible business record cannot properly be admitted for their truth unless they can be shown independently to fall within a recognized hearsay exception.

While we agree fully with this principle of law, we find that it is not implicated in this case and is of no help to Woods. As the district court noted, the

defendants offered the statements in the arrest report and the verified criminal complaint describing the details of the alleged altercation between Woods and Flores not for their truth, but to show the effect that the statements had on the officers. Because the officers asserted the defense of qualified immunity, Woods had the burden at trial to prove that the police lacked probable cause to arrest him. See Sorenson v. Ferrie, 134 F.3d 325, 330 (5th Cir. 1998); see generally Eversole v. Steele, 59 F.3d 710, 717-18 (7th Cir. 1995). The determination of whether an arresting officer has probable cause to arrest an alleged offender turns on whether a reasonable person in the officer's position would have probable cause to believe that an offense has been committed. This inquiry, in turn, depends upon whether the facts and circumstances communicated to the arresting officer at the time of the arrest would warrant a reasonable officer in holding such a belief. The defendants correctly note that "so long as a reasonably credible witness or victim informs the police that someone has committed . . . a crime, the officers have probable cause to place the alleged culprit under arrest . . ." Jenkins v. Keating, 147 F.3d 577, 585 (7th Cir. 1998), and that once such a reasonably credible complaint has been made, the existence of probable cause to arrest does not depend upon the actual truth of the complaint. See Kelley v. Myler, 149 F.3d 641, 647 (7th Cir. 1998) ("Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth that matters."). In this case, the defendants offered the information conveyed to the police by Flores and memorialized in the misdemeanor complaint and arrest report not to show that Woods had actually performed the conduct as reported in those documents, but rather to show that they had probable cause to arrest Woods based upon the information communicated to them by Flores. The district court considered the statements strictly to determine the effect that they would have upon the arresting officers when communicated to them by a presumptively reliable citizen. Thus, the district court did not run afoul of the prohibition on hearsay by considering these documents for this limited purpose.

B. Woods' "affidavit" argument

Woods also argues that the district court should not have considered the arrest report and the misdemeanor complaint because they did not qualify as admissible "affidavits" under 28 U.S.C. sec. 1746 and Fed. R. Civ. P. 56(e). Rule 56(e) authorizes parties to submit affidavits supporting or opposing a motion for summary judgment, but it specifically mandates that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Moreover, 28 U.S.C. sec. 1746 provides, in relevant part, that "[w]herever, under any law of the United States or under any rule . . . made pursuant to law, any matter is required or permitted to be supported . . . by . . . affidavit, such matter may, with like force and effect, be supported . . . by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury . . ." (emphasis added). Woods contends that the misdemeanor complaint and the arrest report were not "affidavits" as contemplated by 28 U.S.C. sec. 1746 because, while they were purportedly sworn by Flores and officer Makowski (respectively), neither document contained the "penalty of perjury" language as required by that section. Moreover, Woods maintains that even if officer Makowski's signed declaration on the arrest report were sufficient to transform that document into an "affidavit," the report would still be inadmissible under Fed. R. Civ. P. 56(e) because it contained statements made by Flores regarding matters not within Makowski's personal knowledge.

Woods' arguments are unpersuasive. First, while Fed. R. Civ. P. 56(e) allows a party to submit affidavits in support of its summary judgment motion, it does not require that all supporting material be submitted in affidavit form. See Fed. R. Civ. P. 56(b) (permitting a party to move for summary judgment "with or without supporting affidavits"); Celotex, 477 U.S. at 323 (1986). Sworn testimony is not the only basis on which summary

judgment may be granted; rather, "'the court may consider any material that would be admissible or usable at trial,'" Aguilera v. Cook County Police & Corrs. Merit Bd., 760 F.2d 844, 849 (7th Cir. 1985) (citation omitted), including properly authenticated and admissible documents or exhibits. See Martz v. Union Labor Life Ins. Co., 757 F.2d 135, 138 (7th Cir. 1985). Therefore, the district court was entitled to consider the arrest report and the misdemeanor complaint even if they were not admissible as "affidavits," under 28 U.S.C. sec. 1746 or Fed. R. Civ. P. 56(e), so long as those documents were properly authenticated and were otherwise admissible.

The district court found the documents admissible as a business record under Fed. R. Evid. 803(6). To be admissible as a business record, a document must have sufficient indicia of trustworthiness to be considered reliable. See Saks Int'l, Inc. v. M/V "Export Champion," 817 F.2d 1011, 1013 (2d Cir. 1987). Normally, to demonstrate such trustworthiness and reliability at the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records. See Federal Deposit Ins. Corp. v. Patel, 46 F.3d 482, 484 (5th Cir. 1995); see also Martz, 757 F.2d at 138 ("When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence."). However, under the rather peculiar circumstances of this case, we feel that the district court did not abuse its discretion in admitting the arrest report and the misdemeanor complaint as business records without requiring the defendants to authenticate them by affidavit.

Woods attached a Chicago Police Case Report to his response to the defendants' motion for summary judgment, and he relied on the case report for its accuracy both in his original response before the district court and in his

appellate brief presented to this Court. The case report recapitulated Flores' account of the altercation as presented in the arrest report and the misdemeanor complaint in each of its essential details. By submitting and relying upon the case report, Woods conceded the accuracy of the documents that the defendants sought to introduce. This situation is strikingly similar to the situation that the First Circuit confronted in Cerqueira v. Cerqueira, 828 F.2d 863 (1st Cir. 1987). In that case, the plaintiff sued the legal titleholder to a fishing boat, seeking recovery for injuries he sustained while he was working on the boat. The defendant moved for summary judgment on the grounds that he was not the owner of the boat and was therefore not liable for the plaintiff's injuries. The defendant tried to show that he was not the owner of the boat by, inter alia, attaching an exhibit to his legal memorandum supporting his motion for summary judgment. The exhibit was purportedly an unsigned draft of an agreement between the parties prepared by the plaintiff's lawyer for use in an earlier case between them, and it showed that the plaintiff had bought the boat and that the defendant held title for the plaintiff because the plaintiff was not a U.S. citizen. In his appellate brief, the plaintiff conceded that he had drafted the document as a proposed resolution of the earlier case. While the court noted that "technically speaking, [the defendant] should have introduced his exhibits into the record through affidavits, not as exhibits to a memorandum of law . . .," it held that given the plaintiff's concession, it was appropriate for the district court to have considered the exhibit in ruling on the motion for summary judgment. Id. at 865. The court reasoned that there was "no point in remanding this case to permit [the defendant] to file an affidavit stating the very thing that [the plaintiff] has conceded, namely, that the document is what it purports to be." Id.

We find this reasoning persuasive and applicable to the facts of this case. By submitting the case report and relying on it, Woods has conceded that Flores made out a complaint against him to the Chicago Police, and that in that

complaint Flores alleged that Woods had threatened to kill him while wielding a lead pipe. Since these are exactly the facts that the defendants sought to prove through the arrest report and the misdemeanor complaint, we conclude that Woods cannot reasonably question the reliability of those documents. Requiring authenticating affidavits in this case would be an empty formality, and the district court did not abuse its discretion when it considered the documents without such affidavits.

Moreover, even were we to hold that the district court erred in considering the arrest report and misdemeanor complaint absent a certifying affidavit or some other traditional method of authentication, such an error would be harmless in this case. Rule 56(c) provides that summary judgment shall be granted if, among other documents, "[the] admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An "admission" includes "anything which is in practical fact an admission" Cerqueira, 828 F.2d at 865 (citation omitted), including statements made in a brief presented to the district court, see United States v. One Heckler-Koch Rifle, 629 F.2d 1250, 1253 (7th Cir. 1980). Woods submitted the case report to the district court, and he relied on its account of the complaint that Flores gave to the police in his response to the defendants' summary judgment motion. As a practical matter, this amounted to an admission of the facts presented in the case report, and the district court was entitled to consider the facts admitted in ruling on the defendants' summary judgment motion. By continuing to rely on the case report and subsequently failing to offer any evidence to rebut its account of Flores' complaint, Woods left the district court free to grant summary judgment upon consideration of the facts admitted by Woods alone and without even considering the arrest report or the misdemeanor complaint. Thus, even if the latter documents were inadmissible and therefore not available for the district court's consideration, the court could still properly have granted summary judgment for the defendants. See In re Sunset Bay Assocs. v. Eureka Fed. Sav. &

Loan Ass'n, 944 F.2d 1503, 1513-14 (9th Cir. 1991) (holding that, once a party had admitted that the opposing party's unauthenticated exhibit contains truthful information, the court may consider the material in that exhibit because "an admission is, or course, admissible in evidence"). In his reply brief, Woods tries to avoid having some of the damaging information in the case report admitted against him (in particular, the case report's statement that the "R/O's interviewed the victim") by asserting that the case report itself is unverified and lacks the "basic foundation predicates of date, time, place, and persons present." However, while unauthenticated documents generally cannot be considered on a motion for summary judgment, a party who submits such a document without reservation cannot subsequently complain because the district court considered the contents of the document. See Walker v. Wayne County, Iowa, 850 F.2d 433, 435 (8th Cir. 1988).

## C. Woods' discovery request

Woods also argues that the district court "applied an erroneous legal standard" in refusing to permit him to depose Flores and the arresting officers before ruling on the defendants' summary judgment motion. Citing Illinois State Employees Union v. Lewis, 473 F.2d 561 (7th Cir. 1973), Woods maintains that summary judgment should not be entered "until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion." See Celotex, 477 U.S. at 326 (1986). Woods contends that the district court erroneously denied him this opportunity, and that its "sua sponte" decision to enter summary judgment was unfair and premature. Woods' argument is unconvincing.

A district court's decision to consider a defendant's motion for summary judgment before allowing the plaintiff to depose certain witness is a discovery matter which we review for abuse of discretion. Doty v. Illinois Central R.R. Co., 162 F.3d 460, 461 (7th Cir. 1998). Rule 56(f) authorizes a district court to refuse to grant a motion for summary judgment or to

continue its ruling on such a motion pending further discovery if the nonmovant submits an affidavit demonstrating why it cannot yet present facts sufficient to justify its opposition to the motion. Fed. R. Civ. P. 56(f). While Woods did ask the district court to postpone its ruling until he could depose Flores and the officers, he did not file an affidavit outlining his reasons for needing further discovery as contemplated by Rule 56(f). This alone justifies affirmance of the district court's decision. See Wallace v. Tilley, 41 F.3d 296, 302-03 (7th Cir. 1994) (holding that the court was precluded from considering whether the district court had abused its discretion in ruling on defendant's summary judgment motion before allowing plaintiff to conduct requested discovery where the plaintiff had not filed an affidavit pursuant to rule 56(f), and stating that "'when a party does not avail himself of relief under Rule 56(f), it is generally not an abuse of discretion for the district court to rule on the motion for summary judgment'" (citation omitted)); see also Jones v. Merchants Nat'l Bank & Trust Company of Indianapolis, 42 F.3d 1054, 1060 (7th Cir. 1994); Kinney v. Indiana Youth Ctr., 950 F.2d 462, 466 (7th Cir. 1991); Boling v. Romer, 101 F.3d 1336, 1339 n.3 (10th Cir. 1996); Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 926 (2d Cir. 1985) (collecting cases); see also Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992) (ruling that unverified statements in an attorney's memoranda of law alleging a need for a continuance on a motion for summary judgment pending further discovery were insufficient as grounds for a continuance under Rule 56(f), and stating that "[a]dvocacy by counsel does not suffice for evidence or fact in the Rule 56(f) context.") (citation omitted).

Further, even if we were to waive Rule 56(f)'s affidavit requirement in this case, we would still find that the district court did not abuse its discretion in ruling on the motion before granting Woods leave to depose Flores and the arresting officers. Woods offered virtually nothing to demonstrate why the depositions that he sought were likely to generate any genuine issue of material

fact. Woods never denied that Flores complained to the Chicago police that Woods had approached him with a lead pipe while threatening to kill him (indeed, his submission of and reliance upon the case report precluded him from denying this)./2 This admission alone would be enough to establish that the arresting officers had probable cause to arrest Woods (thereby entitling the officers to summary judgment on Woods' sec. 1983 claims), absent some evidence showing that it should have been apparent to the officers that Flores was incredible as a matter of law and that the officers acted unreasonably in relying on his complaint. Woods never put forward any such evidence, nor did he explain why discovery was likely to unearth it. Instead, Woods merely pointed to a sentence in the case report which indicated that Flores told the police that he had left the scene of the altercation with Woods thinking that Woods was "overreacting," suggesting that this establishes that the officers should not have relied on Flores' account of the incident when arresting Woods./3 However, Flores' comment that he thought that Woods was "overreacting" is completely irrelevant to the material facts that Woods needed to contest to defeat summary judgment; it tends to show neither that Flores did not report Woods' assault to the police, nor that Flores' account of the assault was in any way incredible. At best it shows merely that Flores thought that Woods was "overreacting" when he assaulted Flores, not that Flores was overreacting by reporting a crime to the police. Thus, based upon the facts that Woods presented to the district court, any claim that Flores was incredible as a matter of law and that the officers should not have relied upon his complaint would have been pure speculation. This is far too slender a reed upon which to hang a discovery request. See generally United States v. All Assets and Equip. of West Side Bldg. Corp., 58 F.3d 1181, 1190 (7th Cir. 1995).

Indeed, under the circumstances of this case, we would most likely affirm even if the district court had converted the defendants' motion to dismiss into a motion for summary judgment and granted the motion without giving Woods any

notice of the conversion or any opportunity to respond to the summary judgment motion. While the conversion of a 12(b)(6) motion into a summary judgment motion "should be accompanied by prior notice and 'a reasonable opportunity to establish the existence of material controverted facts,'" the failure to afford such procedure will not necessarily mandate reversal unless "the record discloses the existence of unresolved material fact issues," or "the parties represent that they would have submitted specific controverted material factual issues to the trial court if they had been given the opportunity." Milwaukee Typographical Union No. 23 v. Newspapers, Inc., 639 F.2d 386, 391 (7th Cir. 1981) (citation omitted). As has been noted, Woods did not present anything that would create a genuine issue of material fact, nor did he point to any specific controverted factual issue that he would be able to present after conducting depositions. Thus, the court could have granted the converted motion against Woods without notice. The fact that the court gave Woods notice and ample opportunity to respond and Woods still failed to raise any genuine issue of material fact only strengthens our conclusion that the district court did not abuse its discretion when it granted the motion without allowing Woods to depose Flores or the officers.

II. Fourth Amendment Issue

Woods argues that his warrantless arrest for misdemeanor assault was unconstitutional because the alleged assault did not involve a breach of the peace and did not occur in the presence of the arresting officers. Woods notes that the Supreme Court has recently stated that "[i]n determining whether a particular governmental action violates [the Fourth Amendment], we inquire first whether the action was regarded as an unlawful search or seizure under the common law when the Amendment was framed." Wyoming v. Houghton, 526 U.S. 295, 299 (1999). The common law in existence at the time of the framing of the Fourth Amendment prohibited a peace officer from making a warrantless arrest for a misdemeanor unless the misdemeanor was committed in the presence of the arresting officer and involved a breach

of the peace. See United States v. Watson, 423 U.S. 411, 418 (1976); Carroll v. United States, 267 U.S. 132, 156-57 (1925); Bad Elk v. United States, 177 U.S. 529, 534-35 (1900). Relying on Houghton, Woods maintains that the common law rule controls the Fourth Amendment inquiry in this case, and that therefore his warrantless arrest for a misdemeanor not committed in the presence of the arresting officers violates the Amendment. Woods further argues that the Chicago "municipal policy" which authorized his arrest is unconstitutional insofar as it abrogates the common law rule. We are not persuaded.

The Supreme Court has never held that a police officer violates the Fourth Amendment merely by arresting someone without a warrant for a misdemeanor offense which did not occur in the officer's presence and/or did not involve a breach of the peace. Rather, when determining the constitutionality of a warrantless arrest for a criminal offense, the Court has repeatedly focused its inquiry on the existence of probable cause for the arrest. See, e.g., Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975). While "the Court has expressed a preference for the use of arrest warrants when feasible," Gerstein, 420 U.S. at 113, the Court has never elevated this judicial preference to a per se rule mandating warrants for all arrests irrespective of the existence of probable cause. See, e.g., Watson, 423 U.S. at 417 (stating that "'such a requirement would constitute an intolerable handicap for legitimate law enforcement'" (citation omitted)). Indeed, in Gerstein, the court noted that it "has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant," 420 U.S. at 113, and in the intervening years since Gerstein it has strayed from this principle only once, when it imposed a warrant requirement for arrests made in a suspect's home. See Payton v. New York, 445 U.S. 573, 585-86, 589-90 (1980) (holding that, absent exigent circumstances, the Fourth Amendment prohibits warrantless, nonconsensual entry into a suspect's home in order to make a felony arrest--notwithstanding the existence of probable cause to arrest). Moreover, in Payton the Court justified its departure from the

usual rule by emphasizing that the Fourth Amendment affords citizens special protections against government intrusions into their homes, stating that "'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed'" (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)) and that the language of the Fourth Amendment "unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" Id. at 589-90 (citation omitted). No authorities cited by either of the parties to this appeal, nor any that we have found, expressly require the police to obtain an arrest warrant before lawfully arresting a subject whom they have probable cause to believe has committed an offense in any instance other than an arrest in a suspect's home./4 Indeed, we have concluded otherwise. See, e.g., United States v. Fernandez-Guzman, 577 F.2d 1093, 1097 (7th Cir. 1978) ("[I]n the area of arrests made in a public place, an arrest warrant has never been considered to be constitutionally mandated even when there was opportunity for one to be obtained.") (citing Watson, 423 U.S. 411 (1976)). Because Woods was not arrested in his home, he cannot avail himself of Payton's holding, and under the inquiry traditionally applied by the Supreme Court, his arrest would not violate the Fourth Amendment unless the arresting officers lacked probable cause.

However, Woods argues that the historical analysis employed by the Court in Houghton changed the traditional Fourth Amendment inquiry and imposed a warrant requirement for all routine misdemeanor arrests unless the misdemeanor is committed in the presence of the arresting officer and involved a breach of the peace. Unfortunately for Woods, however, Houghton did not constitutionalize the common law rules regarding misdemeanor arrests, nor did it even address the reasonableness of an arrest under the Fourth Amendment. Houghton addressed the reasonableness of a search, not of a seizure of the person, and it held merely that "police officers

with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." 526 U.S. at 307. Moreover, neither of the cases cited by Houghton as authority for its historical analysis held that the common law rules governing misdemeanor arrests controls the inquiry into the "reasonableness" of a misdemeanor arrest under the Fourth Amendment. California v. Hodari D. looked to the common law to determine the meaning of "seizure" under the Fourth Amendment, not to determine whether a given seizure was reasonable under the Amendment. See 499 U.S. 621, 624-29 (1991). Wilson v. Arkansas ruled that the common law "knock and announce" rule forms a part of the Fourth Amendment reasonableness inquiry, and that the reasonableness of a search of a dwelling "may depend in part on whether law enforcement officers announced their presence and authority prior to entering." 514 U.S. 927, 931 (1995) (emphasis added). Indeed, in Wilson, the Court was careful not to reduce the reasonableness inquiry to any inflexible, per se rule, noting that "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests," and holding that "although a search or seizure of a dwelling might be constitutionally defective if police officers enter without prior announcement, law enforcement interests may also establish the reasonableness of an unannounced entry." Id. at 934. Thus, neither Houghton nor the cases it relied upon directly support Woods' argument.

Moreover, in a case that was decided after both Hodari and Wilson, the Court strongly and unequivocally affirmed its traditional view that, absent certain extraordinary circumstances, a seizure is reasonable under the Fourth Amendment when it is based upon probable cause regardless of the severity of the offense involved. See Whren v. United States, 517 U.S. 806, 817-18 (1996). In Whren, the Court held that a traffic stop of a motorist by plainclothes policemen in an unmarked car did not violate the Fourth Amendment where the officers had probable cause to believe that the motorist committed a traffic violation. The

motorist argued that the stop was unreasonable because the law enforcement interests in investigating minor traffic offenses were minimal and were outweighed by the individual motorist's right to be free from such intrusions. In rejecting this reasoning, the Court stated that while it is true in principle that the reasonableness inquiry always involves a balancing of all relevant factors, "[w]ith rare exceptions . . . the result of that balancing is not in doubt where the search or seizure is based upon probable cause." Id. at 817. The Court noted that "[w]here probable cause has existed, the only cases in which we have found it necessary actually to perform the 'balancing' analysis involved searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests--such as, for example, seizure by means of deadly force, unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body." Id. at 818 (citations omitted). After concluding that the traffic stop at issue did not "remotely qualify" as any such extreme practice, the Court held that it was "governed by the usual rule that probable cause to believe the law has been broken 'outbalances' private interest in avoiding police contact." Id. Whren did not directly address the question presented here since it involved a temporary traffic detention and not a full custodial arrest, and since it did not address the relationship between the Fourth Amendment and the common law arrest rules. However, Whren's unequivocally stated rationale flatly contradicts Woods' assertion that certain warrantless non-felony arrests violate the Fourth Amendment even if they are based upon probable cause, and it undermines any claim that the reasonable ness of a seizure under the Fourth Amendment depends entirely upon whether the offense is classified as a felony or as a misdemeanor./5


  In addition, while we have never decided whether the Fourth Amendment incorporates the common law "in the presence" rule for misdemeanor arrests,/6 we have held that other aspects of the common law standards of misdemeanor arrests are not part of the Fourth Amendment's

prohibition of "unreasonable" searches and seizures. In Ricci v. Arlington Heights, Illinois, the plaintiff brought a sec. 1983 action against the Village of Arlington Heights and the police officers who had arrested him, arguing that a full custodial arrest for the fine-only misdemeanor offense of operating a business without a license violated the Fourth Amendment. See 116 F.3d 288, 288 (7th Cir. 1997). The plaintiff did not dispute that the officers had probable cause to believe that he was violating the ordinance. See id. at 290. However, the plaintiff argued that the misdemeanor offense for which he was arrested did not involve a breach of the peace, and that because the common law prohibited custodial arrests for such offenses, his arrest was unreasonable under the Fourth Amendment. We declined to read the literal strictures of the common law rule into the Fourth Amendment, and we upheld the plaintiff's arrest on Fourth Amendment grounds, noting that "the common law rule has been relaxed to include arrests for offenses other than breaches of the peace." Id. at 291 (citations omitted). Woods correctly notes that Ricci is distinguishable from his case in some key respects, because Ricci (unlike Woods) committed his offense in the presence of the arresting officers, and because Ricci did not directly address the question of whether and under what circumstances a warrant is constitutionally required for a non-felony arrest./7 However, the fact remains that we upheld a warrantless arrest in Ricci which would not have been permitted under framing-era common law, and in doing so we rejected the argument that the strict terms of the common law rule control the inquiry into the constitutionality of a misdemeanor arrest. Thus, while Ricci does not definitively refute Woods' argument, it directly undermines his major premise.


Moreover, several of our sister circuits have squarely addressed Woods' argument, and they have uniformly held or stated that the common law "in the presence" rule is not part of the Fourth Amendment. See Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 6 (1st Cir. 1997) (upholding a grant of summary judgment for defendant police officer on a sec. 1983 claim alleging illegal arrest, and stating that

"[t]o date, neither the Supreme Court nor this circuit ever has held that the Fourth Amendment prohibits warrantless arrests for misdemeanors not committed in the presence of arresting officers"); United States v. Smith, 73 F.3d 1414, 1416 (6th Cir. 1996) (stating that the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest "is not mandated by the Fourth Amendment; it is merely a rule of the common law"); Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995) (rejecting a Fourth Amendment challenge to a misdemeanor arrest when probable cause existed, and holding that the plaintiff's "right as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer [is] not grounded in the federal Constitution and will not support a sec. 1983 claim"); Fields v. City of South Houston, Texas, 922 F.2d 1183, 1189 (5th Cir. 1991) (ruling that "[t]he United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer"); Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990) (ruling that "[t]he requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment"); Street v. Surdyka, 492 F.2d 368, 372 (1974) (rejecting a constitutional challenge to a warrantless misdemeanor arrest and stating that "[w]e do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence. . . . The fourth amendment protects individuals from unfounded arrests by requiring reasonable grounds to believe a crime has been committed. The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right"); see also Scott v. District of Columbia, 101 F.3d 748, 754 (D.C. Cir. 1996) (noting that several circuits agree that "the Fourth Amendment does not incorporate the common-law presence requirement for misdemeanor arrests, and that no cause of action exists under sec. 1983 unless the arresting officer lacked probable cause to believe a crime was committed," but declining to decide the issue)./8

Therefore, given the weight of Supreme Court authority on this issue, the overwhelming consensus of the circuits, and our similar holding in Ricci, we reject Woods' invitation to constitutionalize the framing-era common law of misdemeanor arrests and to overturn any Illinois state or municipal laws which abrogate it.

However, while the Fourth Amendment does not require a warrant for a misdemeanor arrest like the one effected here, it does require that all warrantless arrests be "reasonable." Payton, 445 U.S. at 585 (citations omitted). We have held that the "reasonableness of an arrest depends on the existence of two objective factors: First, did the arresting officers have probable cause to believe that the defendant had committed or was committing an offense. Second, was the arresting officer authorized by state and or municipal law to effect a custodial arrest for the particular offense." Ricci, 116 F.3d at 290 (quoting United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir. 1989)). Woods' warrantless misdemeanor arrest was authorized by Illinois law, see 725 ILCS 5/107-2 (1998), so in order to survive summary judgment, Woods needed to raise a genuine issue regarding whether the officers had probable cause to arrest him. On the facts presented, there can be no doubt that Woods failed to do so.

Probable cause has been defined as "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein, 420 U.S. at 111-12 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964); see United States v. Rucker, 138 F.3d 697, 700 (7th Cir. 1998). The rule of probable cause is a "practical, nontechnical conception" that affords the "best compromise" between the interests of individual liberty and effective law enforcement. Illinois v. Gates, 462 U.S. 213, 231 (1983); Gerstein, 420 U.S. at 112 (citation omitted). Contrary to what its name might seem to suggest, probable cause "demands even less than 'probability,'" United States v. Moore, 215 F.3d 681, 685 (7th Cir. 2000) (quoting United States v.

Burrell, 963 F.2d 976, 986 (7th Cir. 1992)); it "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." Id. at 686 (citation omitted).

Applying this standard, we have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause. See Tangwall v. Stuckey, 135 F.3d 510, 520 (7th Cir. 1998); Hebron, 18 F.3d at 422; Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 439 (7th Cir. 1986) (holding that a police officer had probable cause to arrest an alleged shoplifter based upon the uncorroborated report of a single security guard, and stating that "[w]hen an officer has 'received information from some person--normally the putative victim or eye witness--who it seems reasonable to believe is telling the truth,' he has probable cause") (citation omitted). In this case, the evidence showed that the arresting officers arrested Woods after Flores made out a criminal complaint against him, claiming that Woods had brandished a lead pipe and threatened to kill Flores. Woods has offered nothing to dispute the fact that the complaint was made, nor does he offer anything to challenge either the accuracy or the credibility of Flores' description of the incident. Woods argues that the complaint as made by Flores, if true, establishes only that Woods had committed a "verbal assault," which is not a crime under Illinois law; thus, Woods argues that Flores' complaint did not give the arresting officers probable cause to believe that Woods "had committed an offense." However, as Woods notes, a offender commits an assault under Illinois law when he engages in "conduct which places another in reasonable apprehension of receiving a battery" 720 ILCS 5/12-1 (1998), and Woods offers nothing which would suggest why his wielding a lead pipe while moving towards Flores and threatening to kill him would not place Flores in reasonable apprehension of receiving a battery. Indeed, such conduct would seem to be the paradigm case of assault as defined by the Illinois Criminal Code, and as the defendants note, the very case which

Woods relies upon for his claim that no crime occurred here states that "[w]ielding a tire iron while using threatening words has been held an assault." People v. Floyd, 663 N.E.2d 74, 76 (Ill. App. Ct. 1996) (citing People v. Alexander, 350 N.E.2d 144 (Ill. App. Ct. 1976)). Thus, Flores' complaint clearly related the occurrence of an assault under Illinois law.

Woods also asserts that there is no documentation showing that the officers attempted to corroborate Flores' complaint in any way, for example by speaking with Flores' supervisor, his coworkers, or the leasing company about his complaint. However, police officers have no constitutional obligation to conduct any further investigation before making an arrest if they have received information from a reasonably credible victim or eyewitness sufficient to supply probable cause. See Gramenos, 797 F.2d at 440. This is true even if sound police technique would have required such further investigation. See id.; see also Spiegel v. Cortese, 196 F.3d 717, 725 (7th Cir. 2000) ("'[t]he inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation.'") (citation omitted). Therefore, even if the police had relied exclusively on Flores' complaint in making the arrest and had made no effort to investigate or corroborate Flores' version of the events, they would have been justified in making the arrest provided that a reasonable officer would have found Flores' complaint to be reasonably credible.

In an effort to call the credibility of Flores' complaint into question, Woods notes that Flores made out the complaint three days after the alleged assault occurred. He also points to the case report, which, in reporting Flores' description of the assault, states that Flores told the officers that he left the altercation thinking that Woods was "overreacting." As we have already noted, however, the case report submitted by Woods indicated that Flores told the police that Woods had renewed his threats against Flores through two of Flores' coworkers on the very day that Flores

made out his complaint. This amounts to an apparently credible explanation for why Flores reported the offense when he did, and Woods offers absolutely nothing either to rebut this explanation or to undermine its credibility. Moreover, the bare fact that Flores left the scene of the altercation thinking that Woods was overreacting does not support any reasonable inference that Flores did not take Woods' threats seriously, nor does it in any way tend to diminish the credibility of Flores' account of the incident. Finally, even if these facts did somehow diminish the credibility of the complaint that Flores made to the police, they certainly would not render it dubious enough to require the police to conduct a further investigation before arresting Woods (that is, they would not render his report incredible as a matter of law). We have found probable cause to arrest based upon uncorroborated citizen complaints which were far more questionable than was Flores' complaint. See Spiegel, 196 F.3d at 724-26 (finding that the defendant police officer had probable cause to arrest the plaintiff even though the victim had waited nearly a month to make a report, and even though there were inconsistencies in the victim's report as well as evidence suggesting that the victim's charge against the plaintiff was retaliatory); Gerald M. v. J. Conneely, 858 F.2d 378, 380-81 (7th Cir. 1988) (upholding district court's grant of summary judgment for police officer in a sec. 1983 case, reasoning that the uncorroborated complaint of a ten-year-old child that his bicycle had been stolen by two other children was sufficient to provide the officer with probable cause to arrest the accused children, even though the arresting officer knew of a long-standing grudge between the victim's family and the family of the accused children). Thus, as Woods failed to raise any material fact calling into question the officers' claim that they had probable cause to arrest him, he was unable to state a constitutional violation as required by sec. 1983, and the defendants were entitled to summary judgment.

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

/1 The defendants also asserted the defense of qualified immunity and argued that Woods failed to establish a causal connection between the alleged municipal policy and his claimed injury. However, the district court did not address these issues, and they are not at issue in this appeal.

/2 Woods did contend that there was no evidence that Flores' complaint was communicated to the particular officers who arrested him, but given that the case report opened its narration of Flores' complaint with the statement that "R/O interviewed victim who related to R/O that. . . . " this argument is at worse disingenuous, and is at best pure sophistry.

/3 Woods also pointed to Flores' delay in reporting the incident as a possible ground for the police to doubt his credibility. However, as the case report indicates, Flores provided the police with a credible explanation for the delay--namely, the renewed threat that Woods had communicated to Flores' co-workers on the day that he reported the incident. Woods does not deny that Flores gave this explanation, nor does he suggest why it might have been incredible.

/4 In Maryland v. Macon, which was decided five years after Payton, the Court expressly reserved the question of whether the Fourth Amendment prohibits a warrantless arrest outside of the home for the state law misdemeanor of distribution of obscene materials. See 472 U.S. 463, 471 (1985).

/5 Furthermore, even after Houghton, courts have continued to apply the traditional "probable cause" standard that was reaffirmed in Whren in determining the reasonableness of an arrest. See, e.g., United States v. Moore, 215 F.3d 681, 685 (7th Cir. 2000); Wooley v. City of Baton Rouge, 211 F.3d 913, 925 (5th Cir. 2000).

/6 In Gramenos v. Jewel Cos., Inc., we reserved the question of whether a state statute abrogating the common law "in the presence" rule for misdemeanor arrests "without putting equivalent guarantees of reasonable conduct in its place" comports with the Fourth Amendment. 797 F.2d 432, 441 (7th Cir. 1986).

/7 As Woods notes, in Ricci we held that the plaintiff had waived any argument under the warrant clause. See id. at 292.

/8 Indeed, most of these courts upheld the constitutionality of the warrantless misdemeanor arrests at issue even though the arrests violated the relevant state law which had incorporated some

variant of the common law "in the presence" rule. Since Illinois law authorizes misdemeanor arrests regardless of whether the offense occurred in the presence of the arresting officer, Woods' claim of a Fourth Amendment violation seems even weaker than the similar claims rejected by many of our sister circuits.