**Catherine SVENDSEN, Plaintiff–Appellant,**

v.

**Ronald WILSON, Defendant–Appellee.**

**No. 01–2761.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 2001.

Decided Jan. 4, 2002.

Before BAUER, RIPPLE, and ROVNER, Circuit Judges.

## ORDER

Catherine Svendsen filed an action under 42 U.S.C. § 1983 alleging that Ronald Wilson, an Illinois State Police officer, violated her Fourth Amendment rights by arresting her without probable cause. The district court granted summary judgment to Wilson. Ms. Svendsen appeals, and we affirm.

Ms. Svendsen lived with her adult son, Shawn Cole, in Palatine, Illinois. Since the 1980s, Mr. Cole, a federally licensed gun-seller, operated a firearms business out of Ms. Svendsen's garage. Like all gun sellers, Mr. Cole was required under Illinois law to conduct background checks on each gun purchaser. To facilitate these background checks, the Illinois State Police operates a call-in system, the Illinois Firearms Transfer Inquiry Program ("FTIP"), through which gun sellers can learn whether a prospective buyer is authorized to purchase a firearm. Mr. Cole was suspended from the program in July 1997 for failing to run background checks on several prospective buyers. His suspension from the program meant that he could no longer run the legally required background checks.

In August 1997 the Illinois State Police began investigating Mr. Cole on suspicion that, despite his suspension, he was still selling firearms. On at least three occasions, undercover police purchased weapons from Mr. Cole. Each sale was conducted in the garage; each time police observed Mr. Cole take the paperwork from the sale into the house. During their surveillance, the police also learned that Mr. Cole regularly attended gun shows with Ms. Svendsen; the two would maintain a booth where firearms were displayed. At one such show, while Ms. Svendsen was present, two undercover police officers-one of which was posing as a recently-released convict-approached Mr. Cole about purchasing a gun. A few days later the officers went to Mr. Cole's garage and purchased a gun.

In February 1998 police obtained a warrant to search Ms. Svendsen's garage and residence for receipts or other papers that would document Mr. Cole's gun sales. Police also obtained an arrest warrant for Mr. Cole. On February 15, several officers drove to a gun show in neighboring Lake County where Mr. Cole and Ms. Svendsen were working at a display booth. Ms. Svendsen testified at her deposition that police approached her, directed her to

stand up, informed her that she was under arrest, and handcuffed her. She stated that police then took her outside the building, where a female officer patted her down and searched her purse. The officer put Ms. Svendsen, still handcuffed, in the front seat of a squad car. She waited in the car approximately 20 minutes while police loaded up her van with the guns and other items from the display booth. Police then drove her in the squad car, still handcuffed, back to Palatine. The ride lasted approximately 40 minutes.

After they arrived back in Palatine, another officer (not Wilson) removed Ms. Svendsen's handcuffs and explained to her that her home was about to be searched. The officer told her that she was not under arrest nor was she required to go with police to her residence, but that she was free to be present during the search if she wished. The officer also informed Ms. Svendsen that police were concerned about dogs on the premises that they believed to be "violent attack dogs." At police request Ms. Svendsen secured the dogs in a cage. The officers then searched her garage and residence, where they found dozens of guns. Mr. Cole was later convicted in state court of possessing unlawful weapons; he has appealed his conviction to the Illinois Appellate Court. No charges were ever brought against Ms. Svendsen.

Ms. Svendsen then filed her § 1983 action against nine state police officers and a state prosecutor involved in the search of her home, alleging numerous violations of her Fourth and Fifth Amendment rights. She later voluntarily dismissed all of her claims except an unlawful arrest claim against Officer Wilson, who had given the order that she be handcuffed. In particular, Ms. Svendsen alleged that police had no lawful basis to handcuff her and transport her from Lake County to Palatine. The state moved for summary judgment,

arguing that Ms. Svendsen's detention was consistent with an investigatory or "Terry" stop; that even if Ms. Svendsen had actually been arrested, police had probable cause to arrest her; and that Officer Wilson had qualified immunity.

The district court determined that Ms. Svendsen's detention exceeded the proper limits of a Terry stop and became tantamount to a custodial arrest when police kept her in handcuffs for nearly an hour while transporting her back to Palatine. Nonetheless, the court concluded, based on what police knew of Ms. Svendsen's activities at the time of the arrest, the police had probable cause to arrest her. The court determined that "[a] prudent officer could reasonably believe plaintiff knowingly facilitated or aided Cole in selling guns despite his suspension from the FTIP program." Finding that the arrest was proper under the Fourth Amendment, the court did not reach the issue of Officer Wilson's immunity. Ms. Svendsen filed a timely notice of appeal.

On appeal, Ms. Svendsen argues that the district court correctly determined that she was in fact arrested by Officer Wilson (rather than simply subjected to a lawful Terry stop). But she argues that a reasonable officer in Officer Wilson's position could not have believed there was probable cause to arrest her, based only on her "mere presence" in the company of another person suspected of criminal activity. We review the district court's grant of summary judgment de novo, construing all facts and drawing all reasonable inferences from the record in the light most favorable to Ms. Svendsen. See Woods v. City of Chicago, 234 F.3d 979, 986 (7th Cir.2000). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Fourth Amendment protects citizens from unreasonable police searches and seizures. U.S. CONST. amend IV; *United States v. Ienco,* 182 F.3d 517, 522 (7th Cir.1999). Not all police-citizen encounters constitute a "seizure," however; a seizure occurs when an officer, by means of physical force or some other show of authority, restrains a citizen's liberty. *Ienco,* 182 F.3d at 523. The Supreme Court held in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that police may stop and briefly detain a person for investigative purposes without effecting a "seizure." To qualify as a *Terry* stop, a detention must be limited in scope and duration. *Ienco,* 182 F.3d at 523. But a *Terry* stop becomes an arrest, with all its incumbent rights, when "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* (citations omitted). An investigative *Terry* stop can ripen into an arrest through the passage of time or the use of force. *See United States v. Sharpe,* 470 U.S. 675, 685–86, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

We may presume here without deciding that Ms. Svendsen's detention became tantamount to an arrest, because we agree that police had probable cause to arrest her; the existence of probable cause precludes her claim under the Fourth Amendment. *See Juriss v. McGowan,* 957 F.2d 345, 349 n. 1 (7th Cir.1992). A warrantless arrest in a public place is constitutionally permissible so long as a reasonable person in the officer's position would have probable cause to believe the suspect has committed a crime. *See Woods,* 234 F.3d at 992. Probable cause requires more than a bare suspicion that the suspect has committed a crime, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false. *Woods,* 234 F.3d at 996 (citations and internal quotations omitted). So long as the totality of the circumstances, viewed in a common-sense manner, reveals a probability or substantial chance of criminal activity by the suspect, probable cause for an arrest exists. *Sawyer,* 224 F.3d at 678–79; *Wollin v. Gondert,* 192 F.3d 616, 623 (7th Cir. 1999). Courts will consider not only the arresting officer's personal knowledge, but also the knowledge of other officers with whom the arresting officer was in communication. *United States v. Sawyer,* 224 F.3d 675, 680 (7th Cir.2000).

We agree with the district court that, based on their knowledge of Ms. Svendsen's activities, police had probable cause to arrest her at the gun show. The undisputed facts show that police knew that Mr. Cole was operating a gun business out of Ms. Svendsen's garage; that Mr. Cole likely kept paperwork from his gun sales inside the house; and that Ms. Svendsen regularly accompanied Mr. Cole to gun shows. Police also knew that Ms. Svendsen sat alongside her son at one such gun show when an undercover police officer, posing as a convicted felon, inquired about purchasing a gun. These facts would be sufficient to lead a reasonable person in Officer Wilson's position to believe that Ms. Svendsen had been involved in her son's illegal activities. *See Woods,* 234 F.3d at 996. The district court thus properly granted summary judgment in favor of Officer Wilson.

AFFIRMED.