**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 5, 2005[*]
Decided October 24, 2005

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2044

| | |
|---|---|
| DAVY CADY,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>SOUTH SUBURBAN COLLEGE,<br>et al.,<br>    *Defendants-Appellees.* | Appeal from the United States<br>District Court for the Northern<br>District of Illinois, Eastern Division<br><br>No. 02 C 8128<br><br>Elaine E. Bucklo,<br>*Judge*. |

**O R D E R**

Davy Cady was expelled from South Suburban College ("SSC"), a community college in South Holland, Illinois, after a classroom confrontation in which he invited another student to "step outside" to settle their differences. He then filed this suit under 42 U.S.C. § 1983 against the school, its trustees, and various instructors, administrators, staff members and students. The suit was ultimately dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. We affirm the

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

dismissal, modifying it to reflect that the state-law claims that were not dismissed on their merits are dismissed without prejudice.

Mr. Cady's complaint identifies two primary events leading up to his expulsion. On February 25, 2002, Mr. Cady asked Betty Majors, an SSC employee, to help him fax a document. When she declined, as Mr. Cady describes it, he "peacefully although emphatically expressed his exasperation and indignation at [her] lack of good customer service." R.18 at 38. Majors evidently perceived the encounter in a more negative light. According to a criminal complaint she signed the next day, Mr. Cady "knowingly began yelling loudly and using profanity repeatedly . . . acting in such an unreasonable manner as to alarm and disturb Betty Majors, and provoke a breach of the peace." R.1 at Ex.B. Based on this complaint, Mr. Cady was arrested and prosecuted for disorderly conduct, and incurred a five-day suspension from SSC.

The next incident took place on April 17, 2002, one month after Mr. Cady's suspension. In an evening class on real estate law, Mr. Cady was engaging the instructor in a debate concerning the nature of quitclaim deeds. Another student, Frederick Woolery, apparently impatient with the exchange, interrupted it by suggesting that Mr. Cady had not done the assigned reading. In response, by his own account, Mr. Cady "did the honorable thing and expressed toward Woolery his reasonable embarrassment and indignation at the insult, verbally defended himself against same, and with the words 'Look, would you just like to step outside?' invited Woolery (to likewise do the honorable thing and) to continue their argument in private outside (in the hallway so as not to disturb the class with such nonsense)." R.18 at 41. Woolery promptly left the classroom, found a security guard, and stated that he felt physically threatened by Mr. Cady's invitation. He signed criminal complaints alleging disorderly conduct and assault, and Mr. Cady was again arrested.

The next week, SSC's Disciplinary Standards Committee held a hearing to consider appropriate disciplinary measures. It heard testimony from Woolery and from the course instructor about the confrontation, including testimony about Mr. Cady's tone of voice and demeanor. Mr. Cady, who was present at the hearing, did not deny having invited Woolery to step outside the classroom, but insisted that his intentions were peaceful. The Committee nevertheless found that Mr. Cady behaved in a threatening manner and thus violated SSC's student code of conduct, which mandates suspension or dismissal for offenses involving "physical harm, or threat of physical or mental harm, to College employees and/or students." R.1 at Ex.E. Soon after that, Mr. Cady was formally expelled.

Mr. Cady then filed a five-count complaint, naming as defendants various school officials, security personnel, and members of the Disciplinary Standards Committee, along with SSC itself. He alleged chiefly that he was arrested without probable cause and that he was expelled without due process of law, and sought damages for the

violation of his constitutional rights. Because at least one of his criminal cases was still ongoing, Mr. Cady requested that the district court stay his civil case before any responsive pleadings were filed. The court granted the motion. Soon, however, the case was transferred to a different district judge, and the stay was withdrawn. Mr. Cady objected that lifting the stay might jeopardize his rights under the Fifth Amendment by requiring him to testify about matters relevant to his criminal cases, but the court concluded that no such problem would arise until the case went beyond the pleading stage.

On August 25, 2003, Mr. Cady filed a 155-page, 49-count First Amended and Supplemental Complaint, adding as defendants half a dozen SSC students and including a variety of new claims under both state and federal law, many of them only tangentially related to his arrests and expulsion. During a status hearing, the district court dismissed eighteen of those counts *sua sponte* as "clearly outside the proper reach of this action" and dismissed the students as defendants. Four months later, the court granted the remaining defendants' motions to dismiss Mr. Cady's claims for lack of jurisdiction and failure to state a claim on which relief can be granted. Based on Mr. Cady's complaint and the materials attached to it, the court held (among other things) that it was reasonable for SSC's security officers to believe they had probable cause to arrest Mr. Cady, and that SSC did not deny Mr. Cady due process.

On appeal, Mr. Cady presents various challenges to the district court's disposition of his case, primarily concerning the validity of his arrests and the propriety of his expulsion. As a threshold matter, however, he argues that the district court should have stayed the case pending resolution of his criminal appeal. As we explained in *Simpson v. Rowan*, 73 F.3d 134, 137–39 (7th Cir. 1995), it is generally appropriate under *Younger v. Harris*, 401 U.S. 37 (1971), for a district court to stay civil proceedings that may interfere with a pending state criminal case. For example, a civil suit seeking damages for an illegal search should be stayed when the legality of the search is at issue in the state criminal proceeding. *See Simpson*, 73 F.3d at 138. But Mr. Cady has given no indication that the outcome of any of his criminal cases hinges on the validity of his arrests--he points to no evidence or testimony, for example, that might be subject to suppression. In the absence of any apparent conflict between the federal and the state proceedings, *Younger* is not implicated, and the district court did not err in declining Mr. Cady's request for a stay. *See United States v. Certain Real Property, Commonly Known as 6250 Ledge Rd., Egg Harbor, Wis.*, 943 F.2d 721, 730 (7th Cir. 1991) ("[Appellant's] failure to indicate with precision how he would be prejudiced if the civil action went forward while the criminal action was pending in state court is yet another factor which leads the Court to the conclusion that he was not entitled to a stay.").

Mr. Cady's other arguments fare no better. For example, he renews his argument that he was arrested without probable cause. But "so long as a reasonably credible witness or victim informs the police that someone has committed . . . a crime, the

officers have probable cause to arrest." *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000) (quoting *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998)) (ellipsis in original).  Mr. Cady counters that the complaints Majors and Woolery signed against him were invalid under Illinois law because they were unsworn.  But even if that is so, "[n]o principle of federal law makes a properly attested complaint necessary to an arrest or criminal prosecution."  *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 434 (7th Cir. 1986).  Mr. Cady further insists that the Illinois statute that allows a police officer to make an arrest for a misdemeanor conducted outside of his presence is unconstitutional.  But we already rejected that argument in *Woods*, 234 F.3d at 995, and find no reason to reconsider our decision here.

Mr. Cady also challenges the propriety of his expulsion, arguing that he was denied due process in the course of his disciplinary hearing.  But as in *Pugel v. Board of Trustees of the University of Illinois*, 378 F.3d 659, 664 (7th Cir. 2004), "[i]t is clear from the complaint" that Mr. Cady "received written notice of the charges against [him] and a pretermination hearing in which [he] had an opportunity to explain his side of the story."  That satisfies due process in this student-disciplinary context.

The rest of Mr. Cady's arguments--for example, that SSC is a "criminal enterprise" under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, or that his case should have been handled by a male judge who could understand his "normative male need for self-defense of personal honor," Plaintiff's Br. at 32,--are for the most part frivolous and do not merit further comment.  The one exception concerns the status of Mr. Cady's state-law claims.  The district court addressed some of those claims on their merits, dismissing them for failing to state a claim under either federal or state law.  Others of them were not separately analyzed, but were dismissed with the rest of the case after the court declined to exercise supplemental jurisdiction.  As Mr. Cady points out, such claims should generally be dismissed without prejudice, *see Groce v. Eli Lilli & Co.*, 193 F.3d 496, 501 (7th Cir. 1999), and the district court offered no explanation for not doing so in this case.

We therefore MODIFY the district court's judgment to reflect that the dismissal of the unaddressed state-law claims is without prejudice, and AFFIRM the judgment as modified.