# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

No. 03-3175

DAVID HAYWOOD,

*Plaintiff-Appellant,*

v.

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01-C-3872—**Matthew F. Kennelly**, *Judge.*

———————

ARGUED MARCH 30, 2004—DECIDED AUGUST 10, 2004

———————

Before POSNER, RIPPLE, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* David Haywood brought suit for
damages under 42 U.S.C. § 1983 against the City of Chicago
and two of its police officers, charging false arrest and
detention in violation of his federal constitutional rights. He
appeals from the grant of the defendants' motion for
summary judgment, and so we construe the facts as favor-
ably to him as the record permits, simplifying them where
possible.

When arrested, Haywood was employed by a pawnshop
as an armed security guard. He was just beginning his
commute to work from his home on Chicago's south side

one day when the defendant police officers, Maras and Marozas, acting on a tip that Haywood was armed, pulled him over. They asked him where he was going; he explained that he was on his way to the pawnshop. They noticed that he had two guns with him; he told them he had papers that proved he was authorized to carry them and he showed them the papers. The papers included a firearm owner's identification card and a "blue card," which certifies eligibility to work for a licensed security agency, 225 ILCS 446/80 (2002), reenacted at 225 ILCS 447/35-30, but did not include either a Chicago gun registration certificate or a "tan card," which certifies that the cardholder, being employed by a licensed security agency (which Haywood probably was not, although this is uncertain) and having received firearms training, may carry a weapon while working or commuting. 225 ILCS 446/185(a), (b), (e) (2002), reenacted at 225 ILCS 447/35-35(a) through (d); 720 ILCS 5/24-2(a)(5). He also had a memo from the police department stating that individuals licensed by the state under the Private Detective, Private Alarm, Private Security, and Locksmith Act of 1993, 225 ILCS 446/1 *et seq.* (2002), do not have to register their weapons; Haywood probably was not licensed, but again this is uncertain. The officers arrested him, though apparently only because he failed to show them a Chicago gun registration certificate, the failure being "presumptive evidence that he [was] not authorized to possess such firearm." Chicago Municipal Code § 8-20-150. The officers seem to have been unaware that he should have had a tan card as well.

Haywood was jailed, and the next day taken before a state court judge for a probable-cause hearing. No one testified at the hearing. The only evidence submitted (besides the arrest report, on which the defendants no longer place any weight) to persuade the judge to find probable cause to detain Haywood was a complaint charging him with knowingly

carrying a concealed, loaded firearm without a license, in violation of 720 ILCS 5/24-1.6(a)(1), (3)(A). He was not charged with having failed to register his guns; they may have been registered, though this is uncertain and he hadn't had a registration certificate with him when he was arrested.

In the space in the complaint for the "complainant's signature" appeared Officer Marozas's name, but in fact Maras had written the complaint and had signed Marozas's name to it. There was no indication of this anywhere in the document, however; nor did the prosecutor mention the fact, of which she may have been unaware, at the hearing. In the place in the complaint for a judge's or court clerk's signature (the "*jurat*"—Latin for "he swears"), attesting that Marozas had both signed the complaint and sworn to the truth of its contents, Maras had written and signed the name of still another police officer, Brumley. Chicago police officers are eligible to sign the *jurat* because they are appointed as deputy clerks of the Cook County circuit court. But Brumley, even if he'd signed the *jurat*, could not have truthfully sworn that Marozas had signed the complaint, because he hadn't.

On the basis of the complaint, the judge ruled that there was probable cause to hold Haywood, and it took the latter 10 days to raise bail money and get out of jail. The charge against him was later dropped. Haywood contends, and for purposes of ruling on summary judgment we must assume, that until the defendants began to prepare their defense against his suit neither the prosecutor, nor the police officers who had arrested Haywood, were aware that his failure to have a tan card was a crime.

He contends that the arrest violated his Fourth Amendment rights because it was not based on probable cause to believe he'd violated any law. The defendants counter with the principle that if arresting officers know facts that indicate

that the person they arrested has committed a crime, the fact that they didn't know the legal significance of those facts does not invalidate the arrest. E.g., *United States v. Reed*, 349 F.3d 457, 462-63 (7th Cir. 2003); *Biddle v. Martin*, 992 F.2d 673, 676-77 (7th Cir. 1993); *Richardson v. Bonds*, 860 F.2d 1427, 1430-31 (7th Cir. 1988); *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 950-53 (9th Cir. 2003). After all, they are not lawyers, and to award a criminal damages because, though he engaged in conduct that any legally trained observer would have noticed was criminal, he had the good fortune to be arrested by officers who didn't have the requisite training and so didn't know he had indeed committed a crime, would be to turn their mistake into his windfall.

The defendants point to two facts known (though their legal significance probably was not) to the officers that demonstrate probable cause to arrest Haywood. The first is that he was arrested at about 7:45 a.m., and when one of the officers called the pawnshop to verify Haywood's employment the person who answered the phone told him that Haywood's starting time was 9 a.m. It is illegal for a security guard to carry a weapon to and from work unless "such commuting is accomplished within one hour from departure from home or place of employment, as the case may be." 720 ILCS 5/24-2(a)(5). So if Haywood, having left his home sometime before 7:45 (in fact, he testified, at 7:39), would not arrive at work until 9, he would violate the one-hour rule. But the fact that Haywood's official start time is 9 a.m. is weak evidence that he wasn't planning to arrive until then. To be on time, one has to plan to arrive somewhat early (especially if the employee is expected to change into a uniform, or make other preparations, at his place of employment before actually beginning to work)—and in fact Haywood testified (and had told the arresting officers) that he was due at the pawnshop by 8:45. If that was the expectation, to satisfy it he would have to arrive a few minutes

before then. If he arrived at 8:39, he would have been commuting for only an hour.

So there was only slight reason to think he was going to violate the one-hour rule. This was provided the police believed that he was expected to show up at work 15 minutes before his official starting time. But though they didn't have to believe him, they didn't call the pawnshop and learn about Haywood's 9 a.m. start time until after they had arrested him. So it was not a fact that they knew at the time of his arrest; and "what an arresting officer does not know is inadmissible to show that he had probable cause for the arrest—otherwise hindsight would validate every arrest of a person who turned out to be a criminal." *Villanova v. Abrams*, 972 F.2d 792, 799 (7th Cir. 1992); see also *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Thompson v. Wagner*, 319 F.3d 931, 934-35 (7th Cir. 2003); *United States v. Copeland*, 321 F.3d 582, 592-93 (6th Cir. 2003).

We needn't resolve the one-hour issue, however, because there is still the missing tan card and its absence clearly created probable cause to arrest Haywood. Of course, not knowing that Haywood should have had a tan card, it is only in an attenuated sense that the officers can be said to have "known" that he did not have it. But he purported to exhibit to them the papers that authorized him to carry a gun, and a police officer who knew the law would have seen that the array was incomplete. See *People v. Mourecek*, 566 N.E.2d 841, 845-46 (Ill. App. 1991).

So Haywood was arrested lawfully. But he could not, consistent with the Fourth Amendment, be continued in custody beyond 48 hours (with inapplicable exceptions) unless a judicial officer determined that there was probable cause to believe that he had committed a crime. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991); *Chortek v. City of Milwaukee*, 356 F.3d 740, 746 (7th Cir. 2004); *Kyle v. Patterson*, 196 F.3d

695, 696 (7th Cir. 1999); *Luck v. Rovenstine*, 168 F.3d 323, 324 (7th Cir. 1999). The defendants argue, rather desperately as it seems to us, that although an arrest warrant may not be issued except on the basis of a sworn affidavit or other sworn testimony (the Fourth Amendment is explicit that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation"), a person may be detained indefinitely on the basis of an unsworn complaint; that anyway the complaint purportedly signed by Marozas *was* sworn, albeit falsely, or at least that "the complaint *purports* to be signed under penalty of perjury" (emphasis added)—whatever that means; that Marozas and Brumley consented to have their names forged; and that the practice of misrepresenting the names of the signing officer and notary is merely a "procedural shortcut" made "in the service of convenience." At oral argument the City of Chicago's lawyer, representing all three defendants, conceded the impropriety of the practice. But the defendants' brief states only that it might be "preferable for the officer signing for his partner to place his own initials next to the signature," and we are reluctant to give binding effect to a concession made in the heat of argument.

The officers' depositions described the practice of signing someone else's name (without disclosure) to a criminal complaint as common, and there is no contrary evidence. If it is common enough to be described as customary—as a practice that the City has so far condoned as to make it a policy—this would be sufficient to defeat any argument that if the practice is unconstitutional the City nevertheless, by virtue of the doctrine of *Monell v. Department of Social Services*, 436 U.S. 658, 694-95 (1978), cannot be held liable for it. See *Palmer v. Marion County*, 327 F.3d 588, 594-95 (7th Cir. 2003); *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995); *Bielevicz v. Dubinon*, 915 F.2d 845, 849-52 (3d Cir.

1990). We need not decide, as the City does not argue that it isn't liable even if the practice is unconstitutional.

Nor do the officers argue qualified immunity in this court. Rather they argue that since an arrest is commonly made on the basis of an unsworn statement, such as an informer's tip, "a judicial officer should be no less entitled to rely on unsworn evidence, including the statements of police officers, when assessing probable cause to arrest." Not only is there a difference between evidence that the judicial officer knows is unsworn and evidence that he is fraudulently induced to believe has been sworn, but the argument contradicts the defendants' position that a falsely sworn statement is the equivalent of a properly sworn statement.

Their further argument—that because the Fourth Amendment mentions "Oath or affirmation" only in connection with the issuance of warrants, less evidence is required to detain a person indefinitely than to arrest him even though the curtailment of liberty is greater—is wooden, and was rejected by the Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975). The Court noted that "the consequences of prolonged detention may be more serious than the interference occasioned by arrest" and therefore "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* at 114; see also *Villanova v. Abrams*, *supra*, 972 F.2d at 796-98; *United States v. Chaidez*, 919 F.2d 1193, 1196-98 (7th Cir. 1990). Since all that is required is a determination of probable cause, we need not make a fetish of sworn testimony; one can imagine cases in which its absence would not invalidate a finding of probable cause. It is true that the Fourth Amendment requires that warrants be on oath, but warrants are issued in ex parte proceedings, whereas a suspect might confess his crime in open court at

his probable-cause hearing, and that would be an even stronger basis for continued detention than a sworn complaint.

The only basis for a finding of probable cause on which the state relies in this case, however, was a falsely sworn complaint whose falsity was, so far as appears, unknown to the judge at the probable-cause hearing. (Compare *United States v. Causey*, 9 F.3d 1341, 1343-44 and n. 1 (7th Cir. 1993), where the judge was informed that a pseudonym had been used in an affidavit to protect the identity of a confidential informant.) Apparently Marozas was in court as well as Maras, though this is not entirely clear. But if so he didn't testify, and given the complaint the judge had no reason to question him and did not. On its face it looked like a complaint signed by an officer under penalty of perjury if he was lying—indeed, signed by the officer who had accompanied the prosecutor to court—with his signature duly notarized so that he couldn't later, if charged with perjury, deny that it *was* his signature. It is the prospect (remote as it may be) of prosecution for perjury, plus whatever slight moral pressure the taking of a solemn oath may still exert, that furnishes the rationale for preferring sworn to unsworn testimony. The prospect and pressure were weakened in this case by the forgeries. Even if Maras was authorized to sign Marozas's name, if it turned out that the complaint was perjurious Marozas, who neither drafted the complaint (Maras did) nor signed it, could not be prosecuted, unless perhaps he authorized Maras to sign his name without disclosure that it wasn't really Marozas's signature; in that case he could probably be prosecuted for subornation of perjury. 720 ILCS 5/32-3. Maras could be prosecuted for perjury; he presumably would be estopped by his fraud to deny that the false signature was a representation made "under Oath or affirmation." 720 ILCS 5/32-2; *People v. Dinger*, 435 N.E.2d 1348, 1350 (Ill. App. 1982); *People v. O'Neal*, 352 N.E.2d 282,

284 (Ill. App. 1976); *United States v. Brooks*, 285 F.3d 1102 (8th Cir. 2002). That may be why the defendants latch on to the fact that the complaint was sworn, though by whom, exactly, is obscure. But they do not concede that *anyone* could be prosecuted for perjury should the contents of such a complaint be found to be perjurious, and certainly such a prosecution would be less likely than if Maras had signed his own name.

The defendants' last line of defense is that the fraud was harmless, as in cases of typographical errors and other inadvertent technical irregularities, *United States v. Skinner*, 972 F.2d 171, 177 (7th Cir. 1992); *United States v. Bentley*, 825 F.2d 1104, 1109 (7th Cir. 1987); *Hirschfeld v. United States*, 54 F.2d 62 (7th Cir. 1931); *United States v. Brooks, supra; United States v. Warren*, 42 F.3d 647, 653 (D.C. Cir. 1994), because Maras, having been one of the arresting officers, was in as good a position to sign the complaint in his own name as Marozas was. But then it's extremely odd that Maras didn't sign his own name. The defendants say it's because Maras wasn't planning to be in court the day of the hearing, but it seems that Marozas was planning to be there, so why didn't he sign his own name to the complaint? Well, maybe for some undisclosed reason he wasn't available to sign the complaint, and in that event Maras could have signed for him but should have indicated that that was what he was doing, as by writing "per E.M." under the purported signature of Marozas.

Immaterial falsehoods, even deliberate ones, in an affidavit that is presented to a judge or magistrate in support of a request for the issuance of an arrest or search warrant do not invalidate the warrant should it be issued. *Franks v. Delaware*, 438 U.S. 154 (1978); *United States v. Jackson*, 103 F.3d 561, 573-75 (7th Cir. 1996); *United States v. Causey, supra*, 9 F.3d at 1342-44. The same is true regarding a sworn com-

plaint submitted to obtain a judicial finding of probable cause to detain a person who has been arrested. See, besides the cases cited earlier, *Jones v. Cannon*, 174 F.3d 1271, 1284-85 (11th Cir. 1999). But this isn't such a case. No one signs another person's name by accident; there is no indication that Maras failed merely by inadvertence to indicate that he was signing another person's name; and a fraudulent complaint cannot provide the sole basis for a finding of probable cause. See *United States v. Cortina*, 630 F.2d 1207, 1213-17 (7th Cir. 1980); *United States v. Hammond*, 351 F.3d 765, 773-74 (6th Cir. 2003). So although we agree with the district court that the arrest itself was lawful, the grant of summary judgment with respect to the continued detention ordered by the judge at the *Gerstein* hearing was error, and so the case must be remanded and the plaintiff's supplemental state-law claims, dismissed because the district court dismissed the plaintiff's federal claims before trial, reinstated.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

A true Copy:

      Teste:

                                _____
                                *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*