NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued August 2, 2011
Decided August 22, 2011

**Before**

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-1350

| | |
|---|---|
| CHESTER NELSON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 09 C 5033 |
| VILLAGE OF LISLE, ILLINOIS, and | |
| JENNIFER MARQUEZ, | Gary Feinerman, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

In this action under 42 U.S.C. § 1983, Chester Nelson claims that police officer Jennifer Marquez, working for the Village of Lisle, Illinois, falsely arrested and maliciously prosecuted him for criminal destruction of property, trespass to residence, and battery. He appeals the district court's grant of summary judgment to Officer Marquez and the Village, and he raises two issues. We affirm. The arrest was supported by probable cause, and this court does not recognize federal claims for malicious prosecution in states whose law, like that of Illinois, provides an available tort remedy.

I.       *The Facts and Procedural Background*

The villages of Lisle and Robbins, Illinois, sit some 30 miles apart. During the events underlying this § 1983 action, Nelson lived and worked as a mail carrier in Robbins. His ex-girlfriend, Chaunte Robinson, lived in Lisle. On Saturday, October 11, 2008, Robinson made a 911 call accusing Nelson of trying to break into her apartment. We recount the evidence of the 911 call and its aftermath in the light most favorable to Nelson, who lost on summary judgment. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

Robinson made her emergency call some time around 10 a.m., explaining to a Lisle dispatcher that an ex-boyfriend who lived in Robbins had just kicked her door in and had run off. She warned that he had threatened her before. Robinson added that she saw him "running towards the Lisle Metra [commuter train] station." Although Robinson later testified in her deposition that she never actually saw Nelson at the scene, she admitted telling both the dispatcher and Officer Marquez (who arrived soon after her call) that she saw him running away. Robinson also told the dispatcher that she last saw Nelson about twenty minutes before calling, which means that the break-in ended around 9:40 a.m.[1]

Officer Marquez drove to Robinson's apartment in response to the dispatcher's message that a caller at that address delayed calling "about 20 minutes" and was now "advising [that] her ex-boyfriend kicked in her front door. He took off on foot, last seen heading towards the train. Last seen on foot heading towards the Metra. . . . He does own a .38 caliber handgun; unknown if he has that with him. . . . [but] he has made threats against the [caller's] life in the past." At the scene, Officer Marquez observed wood splinters lying about the floor near Robinson's apartment door, and she saw that the lock was broken off from its casing. The apartment appeared to her to have been ransacked.

The record contains conflicting evidence about what Robinson told Officer Marquez. In the officer's words, Robinson told her when she arrived that Robinson's "ex-boyfriend had kicked in the door of her place, stolen some money, threatened her, and pushed her." According to a sworn declaration that Robinson signed after her deposition, she never said anything to Officer Marquez about theft, threats, or pushing. At this stage of the litigation, we must treat Robinson's version as true. In the same declaration, Robinson said that she told Officer Marquez that a neighbor (and not she) had seen Nelson kicking in her door.

Armed with information from the dispatcher and Robinson that Nelson had kicked in Robinson's door, supplemented with her own observations of the property damage, Officer

---

[1]The record is murky on whether it was the call or the break-in that happened at 10 a.m. If the break-in happened then, the call must have happened around 10:20. The difference is not material; either time-line is consistent with our decision today.

Marquez used a telephone number Robinson gave her to call Nelson. According to Nelson's deposition testimony, he took the call on his cell phone around 11:15 or 11:20 a.m., more than an hour after the alleged break-in. Nelson told Officer Marquez he was out on his mail delivery route in Robbins. The driving time between Lisle and Robbins is about 45 minutes. *Driving Directions from Lisle, IL, to Robbins, IL*, GOOGLE MAPS, http://maps.google.com (follow "Get Directions" hyperlink; then search "A" for "Lisle, IL" and search "B" for "Robbins, IL"; then follow "Get Directions" hyperlink). Officer Marquez asked Nelson to report to the Robbins police station.

About five minutes later Nelson appeared at the Robbins station. Officer Marquez drove from Lisle to Robbins, where she arrested Nelson. Just before the arrest, she spoke with a Robbins police captain who reported that another Robbins officer knew Nelson and had seen him in town at 7:30 a.m. Officer Marquez responded that the crime had happened later in the morning. Officer Marquez arrested Nelson and took him to Lisle, where she signed complaints charging him with criminal damage to property, trespass to residence, and two counts of domestic battery. The latter counts stemmed from Nelson's alleged theft of money from the apartment and shoving of Robinson, events that Robinson now maintains Officer Marquez fabricated. Two days later, Nelson was released on bond from jail. The charges against him were eventually dropped.

Nelson sued Officer Marquez and the Village of Lisle under 42 U.S.C. § 1983, claiming false arrest in violation of the Fourth and Fourteenth Amendments, malicious prosecution in violation of the same Amendments, and, with the help of supplemental jurisdiction under 28 U.S.C. § 1367, malicious prosecution under Illinois law. After discovery, the defendants moved for summary judgment. The district court granted the motion, concluding in relevant part that Officer Marquez had probable cause to arrest Nelson for criminal damage to property (thus defeating any claim of false arrest), and that the availability of an Illinois-law remedy for malicious prosecution made a parallel federal claim unavailable. The court also relinquished jurisdiction over the state-law claim.

II.     *Analysis*

On appeal Nelson argues, first, that the district court erred in concluding that probable cause made reasonable his warrantless arrest for a misdemeanor crime that happened outside Officer Marquez's presence. Except for arrests in the home, which generally require a warrant, *Woods v. City of Chicago*, 234 F.3d 979, 991-95 (7th Cir. 2000), probable cause to arrest a suspect for any offense, even one occurring outside the officer's presence, bars liability for false arrest, *Brooks v. City of Aurora*, — F.3d —, —, 2011 WL 2623507, at *5 (7th Cir. July 6, 2011); *Stokes v. Board of Education of City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). And probable cause to arrest requires no more than a reasonable chance

– less than a 50 percent likelihood can be sufficient – that a crime occurred and the suspect committed it. *Mucha v. Village of Oak Brook*, --- F.3d ---, ---, 2011 WL 489617, at \*3 (Feb. 14, 2011); *Purvis v. Oest*, 614 F.3d 713, 722-23 (7th Cir. 2010). An apparently credible victim who knows the defendant and identifies him as the perpetrator will typically suffice for probable cause. *McBride*, 576 F.3d at 707; *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003); *Woods*, 234 F.3d at 996.

Here, Robinson fulfilled that role. Maintaining to both the dispatcher and Officer Marquez that Nelson victimized her by knocking down her door, she told Officer Marquez that she had seen Nelson running away from her apartment (where the officer found a shattered door), and explained that she knew him from a dating relationship. That identification gave Officer Marquez a tip that fits the model for tips sufficient to support probable cause, even if later evidence showed that Robinson might be an unreliable trial witness. See *Woods*, 234 F.3d at 997 (discussing "questionable" victim narratives that yielded probable cause in previous cases, despite other evidence that could be used to impeach the victim's credibility).

Nelson counters that Officer Marquez knew he had an airtight alibi, which defeated probable cause: A police officer had seen Nelson in Robbins at 7:30 that morning; 30 miles is a long trip; and Nelson was therefore unlikely to have made it from Robbins to Lisle when the break-in occurred, let alone returned to Robbins by 11:20. But these contentions suggest at most that it would have been inconvenient for Nelson to break into Robinson's apartment, not that Robinson's story was implausible; the alibi is hardly airtight. Nelson himself had told Officer Marquez that he was working his postal route, thereby suggesting to her that he probably was driving a vehicle. Thus, Officer Marquez could reasonably surmise that Robinson could make the 45-minute trip to Lisle in the two-plus hours between 7:30 and the break-in around 9:40, and return by 11:20, over an hour and a half later (or an hour and a quarter later if the break-in ended around 10:00).

Still, Nelson insists, the Fourth Amendment imposed on Officer Marquez a duty to investigate the possibility that he was at work all morning and exclude the possible alibi, perhaps by seeking coworkers and townspeople to ask about his whereabouts. Yet police need not investigate every potentially exculpatory detail. Once there is probable cause, pre-arrest investigation may cease. *Stokes*, 599 F.3d at 624; *McBride*, 576 F.3d at 707. Police may not ignore "conclusively established" evidence that defeats probable cause, *McBride*, 576 F.3d at 707, or "clearly exculpatory facts," *Stokes*, 599 F.3d at 624, but a police officer's sighting of Nelson in Robbins two or more hours before the alleged break-in and Nelson's appearance in Robbins more than an hour after the crime were not conclusive evidence of innocence. More investigation, although possible, was not required by the Fourth Amendment.

One thread running through Nelson's arguments is his criticism of this court's jurisprudence on the duty to investigate. He points, for instance, to the tension he sees between twin admonitions in *McBride* that an officer "may not close his eyes to facts that would clarify

the situation," but that "once an officer has established probable cause, he may end his investigation." 576 F.3d at 707. On closer inspection, the tension dissipates: The first part of the sentence explains that investigating officers cannot ignore what they dig up, while the second says that the Fourth Amendment lets them stop digging when they uncover information yielding probable cause. There is no need here to revisit *McBride* and similar cases.

Furthermore, because the strength of Robinson's identification is not diminished by Nelson's "alibi" evidence, his case would provide a poor vehicle for reconsidering this line of cases on the absence of a duty to continue to investigate after obtaining probable cause. Even under the cases from other circuits that Nelson cites, Officer Marquez would not be required to investigate further. In *Russo v. City of Bridgeport*, 479 F.3d 196, 200 (2d Cir. 2007), for instance, the victim did not know the suspect personally and the police refused to watch a gas-station surveillance video during the suspect's 217-day detention that showed a robber whose physical appearance exculpated the suspect. In *Kingsland v. City of Miami*, 382 F.3d 1220, 1230-31 (11th Cir. 2004), when arresting a driver for intoxication, the police ignored the fact that the arrestee's head trauma and other injuries from a car crash explained the results of the field-sobriety test. Finally, in *Sevigny v. Dicksey*, 846 F.2d 953, 955 (4th Cir. 1988), a police officer flatly arrested a mother without probable cause for either of the two crimes advanced in court (child abuse or property damage). The officer's failure to investigate contributed to the problem, but the real issue lay in the total absence of probable cause. Here, by contrast, Robinson knew Nelson well and placed him at the scene of a break-in. Officer Marquez did not ignore the evidence of a supposed alibi based on Nelson's earlier presence in Robbins, but considered it and reasonably determined that the timing of Nelson's appearances in Robbins was consistent with his having committed the crime in Lisle.

Next, Nelson argues that even if his claim of false arrest fails, his federal claim for malicious prosecution should survive under the due process clause of the Fourteenth Amendment, at least as to the battery counts. That contention is based on an inference Nelson draws from Robinson's declaration that Officer Marquez lied about Nelson's shoving of Robinson when she signed the misdemeanor complaints. (He may also be arguing that the basis for the trespass charge was fabricated; he focuses, however, on battery.) Nelson's argument is foreclosed by *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011). In *Ray* we upheld the dismissal of a claim that police officers violated the Fourteenth Amendment by fabricating drug charges for a suspect validly arrested for a traffic offense, and thereby maliciously prosecuted him. Because Illinois law already provides a remedy for malicious prosecution, see *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996), state law affords falsely accused suspects all the process they are due under the Fourteenth Amendment. *Ray*, 629 F.3d at 664; *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001).

Apart from the Fourteenth Amendment due process theory, Nelson contends that the Fourth Amendment offers an independent source of malicious-prosecution liability for

fabricated charges. But as *Ray* confirms, the Fourth Amendment governs only searches and seizures, not post-arrest, pre-trial proceedings like the court appearances compelled by criminal charges. See *Ray*, 629 F.3d at 664; *Bielanski v. County of Kane*, 550 F.3d 632, 638, 642-43 (7th Cir. 2008); see also *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004) (rejecting "continuing seizure" approach to Fourth Amendment claims based on post-arrest events). Nelson's two-day jail stint was an incident of his arrest, which was supported by probable cause to charge him with property damage. Limited to two days, and absent any evidence that the police in fact prolonged his detention on the property-damage and trespass charges with the allegedly gratuitous battery charges, the jail time did not exceed constitutional bounds. See *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-58 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975); *Haywood v. City of Chicago*, 378 F.3d 714, 717 (7th Cir. 2004).

We acknowledge the possibility that the battery charges increased the bond amount that Nelson had to pay for his release, and that he might have posted bond earlier if the amount had been lower. (Nelson's bail was set at $3,000 on the day after his arrest; his mother posted a 10 percent bond the next day.) But Nelson has pointed to no evidence of the likely bail amount for a standalone charge of property damage, and he has not substantiated how much faster he and his mother could have posted the bond for such a lower amount.

Recognizing that *Ray* rejects claims against police under the Fourth Amendment for malicious prosecutions, Nelson argues that *Ray* is an unreasoned extension of its predecessors that deserve a fresh look. This court previously refused, in opinions like *Johnson v. Saville*, 575 F.3d 656, 663-64 (7th Cir. 2009), and *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009), to foreclose Fourth Amendment claims of malicious prosecution for injuries arising from a malicious arrest. *Ray* is consistent with this case law. It merely confirms that neither the Fourth nor Fourteenth Amendments supply remedies for post-arrest prosecutorial injuries, like maliciously compelled court appearances, unless state law provides no tort remedy for malicious prosecution. *Ray*, 629 F.3d at 664. But like the case law that preceded it, *Ray* does not bar a claim that an arrest itself was malicious, at least if the arrest was not supported by probable cause. Nonetheless, plaintiffs who claim under the Fourth Amendment that an arrest lacks probable cause should probably eschew the phrase "malicious prosecution," which adds nothing but confusion. See *Tully v. Barada*, 599 F.3d 591, 595 (7th Cir. 2010); *Newsome*, 256 F.3d at 751.

On appeal Nelson offers no theory of municipal liability for the defendant Village of Lisle under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and at all events the Village is free from liability because its agent has done no constitutional wrong. See *Bielanski*, 550 F.3d at 645. Finally, because Nelson does not independently challenge the district court's relinquishment of supplemental jurisdiction over his state-law claim for malicious prosecution, we also leave that portion of its decision intact.

The judgment is AFFIRMED.